**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTOPHER ROBINSON | : | CIVIL ACTION NO. 3:02CV1470(CFD) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| ROSETTA JONES, | : | |
| *Defendant* | : | OCTOBER 13, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.       **INTRODUCTION**

The plaintiff, Christopher Robinson, was formerly employed by the State of

Connecticut, Department of Correction at the Brooklyn Correctional Facility (hereinafter

"Brooklyn" or "BCI").  The defendant, Rosetta Jones, is the former warden at BCI and is

sued in her individual capacity only.  Complaint, ¶ 4.  The plaintiff alleges in his single

count complaint that he was "punished" by the defendant "repeatedly" for his exercise of

protected First Amendment rights.  Id., ¶ 17.  The plaintiff asserts that the defendant had

the duty and opportunity to protect him from the "unlawful actions of other [Department

of Correction] officials but failed and refused to perform such duty . . . ."  Id., ¶ 6.

Plaintiff also alleges that the defendant "intentionally and maliciously treated the plaintiff

differently from other similarly situated Correction Officers in violation of his Fourteenth

Amendment right to equal protection of the laws."  Id., ¶ 18.

In his Complaint, the plaintiff specifically alleges that in 1998 the defendant Jones removed him from the "Confined Space Rescue Team" on the basis that he had 38 absences from work the previous year.  Id., ¶ 7.  Plaintiff claims that he filed a grievance and "got her ruling overturned" which then precipitated "a campaign of retaliation against him for his successful use of his First Amendment right to the freedom of association with his union."  Id.

Plaintiff alleges further that one, Captain McNally, a subordinate of the defendant Jones, approached him in March of 2000 and criticized him for associating with another Correction Officer, a union steward.  Id., ¶ 8.  Plaintiff characterizes this conversation as an attempt to intimidate him for exercising his First Amendment associational rights with respect to his union.  Id.  Plaintiff asserts that the McNally conversation was brought to the attention of the defendant Jones but she refused to take any action "to protect the plaintiff or discipline the wrongdoer."  Id.

On August 12, 2000, plaintiff alleges that he slipped and fell on a bag of empty plastic soda bottles located in the supply corridor closet at BCI thereby sustaining a physical injury.  Plaintiff alleges that a week prior to the August 12, 2000 slip and fall he had brought the soda bottle hazardous condition to the attention of a Correction lieutenant.  Id., ¶ 9.  After documenting his slip and fall in a written report, plaintiff alleges that he was instructed by one of the "defendant's subordinates," Lt. Lalumiere, to delete reference to his earlier report to another Lieutenant relative to the bags of soda bottles.  Id., ¶ 10.  Plaintiff claims he refused to delete that reference in his report.  Id.

Plaintiff alleges that in response, the defendant Jones imposed "formal written discipline" on September 1, 2000, while fully aware that she was punishing the plaintiff for his refusal to alter his report as Lt. Lalumiere had directed.  Id.

Plaintiff further alleges that on August 26, 2000, and again on September 5, 2000, Lt. Lalumiere subjected him to "harsh and abusive language" in connection with "minor issues" occurring at Brooklyn.  Id., ¶ 12.  Plaintiff claims that in response to Lt. Lalumiere's verbal "abuse" he exercised his First Amendment associational right, as provided by his collective bargaining agreement, to request union representation.  Id.

Plaintiff further asserts that in response to his exercise of his right to freedom of association, the defendant Jones ordered him to appear before her for a disciplinary conference.  Id., ¶ 13.  The conference was conducted by one Daniel Martin, who issued a written reprimand to plaintiff on November 3, 2000.  Id.  Plaintiff alleges that Martin acted pursuant "to the directives" of the defendant Jones.  Id.

Finally, the plaintiff alleges that the defendant Jones "demanded" that two other correction officials, Major Bussiere and Captain Ford, removed him from the Tactical Operations Unit, District III, C.E.R.T., on the grounds cited in pending disciplinary action resulting in the written reprimand.  Id., ¶ 14.  The plaintiff seeks compensatory and punitive damages and attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988. Id.  Prayer For Relief.

At his deposition in July of 2004, plaintiff related that a meeting was called among Complex Warden Murphy, plaintiff and his union representative, and defendant to discuss an incident occurring during the Rowland-Kennelly gubernatorial campaign involving plaintiff's placement as a joke of a bumper sticker on Complex Warden Murphy's state car.  (Dep. at pp. 72-76).  Plaintiff testified that it was his belief that this meeting precipitated a campaign of harassment directed against him by the defendant Jones.  Id.

At his deposition, plaintiff also alleged that he had been retaliated against and treated disparately in January of 2001 when the Connecticut State Police investigated an inmate's allegations of sexual assault/harassment against plaintiff.  (Dep. at pp. 143-162).

Finally, the plaintiff claimed at his deposition that he was retaliated against in early 2001 for failure to timely file an Incident Report with his Lieutenant when an inmate pushed him out of a doorway.  (Dep. at pp. 151-152).

Plaintiff's last day of work as a CO with the Department of Correction was March 7, 2001 when an earlier work related shoulder injury prevented him from further CO activity.  (Dep. at pp. 19, 20).  Plaintiff thereafter applied for, and was granted, a disability retirement pension.  Id.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant now moves for summary judgment.

## II.  **FACTS**

Please see Local Rule 56(a)(1) Statement, submitted herewith.

## III.  **ARGUMENT**

### A.  **STANDARD OF REVIEW**

Under Rule 56(c) summary judgment shall be granted to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  The burden of demonstrating that no factual dispute exists rests on the party seeking summary judgment. See Gallo v Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).  Once this burden has been met, in order to avoid the motion being granted, the non-moving party must come forward with specific facts showing that a genuine issue of material fact exists for trial. See Weg v. Macchiarola,  995 F.2d 15, 18 (2d Cir. 1993).  A factual issue is material if its resolution could affect the outcome of the dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986);  Converse v. General Motors Corp., 893 F.2d 513, 514 (2d Cir. 1990).  A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. See Securities Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).

The Court's role is to determine whether issues exist to be tried, not to try issues of fact. See Balderman v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). The court must review the evidence in the light most favorable to the non-moving party, and draw all factual inferences in that party's favor. See Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir. 1994); Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988). Summary judgment is improper if there is any evidence in the record from which a fair inference may be drawn on a material issue of fact in favor of the party opposing the motion. See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). Mere conclusory allegations, however, will not satisfy the opposing party's burden. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56"). Summary judgment may be granted when no reasonable trier of fact could find in favor of the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). In short, "the inquiry on a summary judgment motion is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Lloyd v. WABC-TV, 879 F. Supp. 394, 399 (S.D.N.Y. 1995) quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

**B.    JUDGMENT SHOULD ENTER FOR DEFENDANT
ON PLAINTIFF'S FIRST AMENDMENT
RETALIATION CLAIM.**

As this Court set forth in <u>Petrario v. Cutler</u>, 187 F.Supp.2d 26, 32

(D.Conn. 2002), "[a] public employee making a First Amendment claim based on

activity implicating freedom of association and free speech must:

> "initially demonstrate by a preponderance of the evidence that: (1) his
> [activity] was constitutionally protected, (2) he suffered an adverse
> employment decision and (3) a causal connection exists between his
> [activity] and the adverse employment determination against him, so that
> it can be said that his [activity] was a motivating factor in the
> determination.  If the plaintiff establishes these factors, the defendant has
> the opportunity to show by preponderance of the evidence that it would
> have taken the same adverse action even in the absence of the protected
> conduct."  (citations omitted).

In this case, plaintiff fails to proffer sufficient evidence that his First Amendment

claim meets any of the foregoing elements of a <u>prima</u> <u>facie</u> First Amendment retaliation

case.

**1.    Plaintiff's Associational Activities/Speech Do Not
Involve Matters Of Public Concern.**

In <u>Cobb, et al. v. Pozzi, et al</u>., 363 F.3d 89, 102 (2d Cir. 2004), the Second Circuit

removed any doubt as to whether the "public concern" analysis applies to expressive

associational claims by announcing that it had joined the Fourth, Sixth and Seventh

Circuits in holding that "a public employee bringing a First Amendment freedom of

association claim must persuade a court that the association conduct at issue touches on a

matter of public concern."  In terms of First Amendment retaliation analysis, therefore,

7

there is no difference between a pure free speech claim and an expressive association claim, or any "hybrid" form thereof.  Id. at p. 104 ("[T]here should exist no hierarchy among First Amendment rights.").

Expressive association is not protected by the Constitution in an employment setting unless it involves a matter of public concern. Cobb, 363 F.3d at 102, 107 ("[A]ctivity touching only on matters of private concern – cannot support a claim for First Amendment retaliation in the employment context."); See Connick v. Meyers, 461 U.S. 138, 145 (1983) ("[I]f [plaintiff's] questionnaire cannot be fairly characterized as constituting speech on a mater of public concern, it is unnecessary for us to scrutinize the reasons for her discharge."). This is a question of law and is for the court to determine. Lewis v. Cowen, 165 F.3d 154, 163 (2nd Cir. 1999). The plaintiff has the burden of showing that his speech or expressive associational conduct involved a matter of public concern. See Connick 461 U.S. at 145; Larsen v. Lynch, 1998 U.S. Dist. LEXIS 21932, 1998 WL 229919, at *4 (D.Conn. 1998) ("[T]he court should not speculate as to what activities of public concern the plaintiff may have undertaken when the record shows none.").

Expressive associational activity does not relate to a matter of public concern unless it relates to a matter of political, social, or other concern to the community. See Connick, 461 U.S. at 146. Expressive associational activity that involves purely private matters, does not relate to a matter of public concern. See Id. at 147 ("[A] federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken

by a public agency allegedly in reaction to the employee's behavior."); Lewis, 165 F.3d at 164; Larsen, 1998 WL 229919 at *4. In reaching its decision, the court should focus on the motive behind the association. Lewis, 165 F.3d at 163.

### a. Plaintiff's Personal Grievances And Other Private Employment Matters Do Not Raise To The Level Of Public Concern.

The Court should grant the defendant's motion if it determines the expressive associational activity was purely to redress personal grievances, or involved purely private matters. See Lewis, 165 F.3d at 163. An employee's dissatisfaction with the conditions of his own employment does not involve a matter of public concern. See Connick 461 U.S. at 146; Oppenheim v. Gutteridge, 225 F.Supp.2d 185 (D.Conn. 2002) (noting that the plaintiff's grievance was not a matter of public concern for the purpose of First Amendment retaliation claims because she merely grieved a constitutional violation against her *personal* rights alone); Larsen, 1998 WL 229919 at *4. In Larsen, the District of Connecticut found that the plaintiff, president of a chapter of a government employees' union, did not exercise protected expression when he filed grievances for: i) failure to hire him as a full time EMT; ii) a disciplinary action taken against him in the form [of] a written warning; iii) a disciplinary action taken against him in the form of a week's suspension without pay. Larsen, 1998 WL 229919 at *4, 5. The court held that these grievances involved purely private matters and so were not protected by the First Amendment.

Plaintiff here has not provided evidence that any of his claimed instances of exercising his expressive associational rights relate to a matter of public concern. First, Plaintiff claims that he grieved *his* removal from the Confined Space Rescue Team in 1998. (Dep. at p. 66). Just like the plaintiff's grievances for failure to hire and for a week's suspension in <u>Larsen</u>, the grievance here is not entitled to First Amendment protection because it concerns only a matter personal to the plaintiff, and does not relate to any social, political, or other matter of concern to the general public.

Second, plaintiff refused to follow a direct order to delete certain portions of an incident report involving the "soda bottles" (Dep. at p. 93) because he was worried about *his* future career and possible discipline against *him*, allegedly telling his supervisor, Lieutenant Lalumiere, "I feel that it could subsequently come back to bite me in the rear end." (Dep. at p. 202). There was no other concern expressed.

Third, plaintiff allegedly requested union representation on August 26 and September 5, 2000 when initially questioned concerning issues relating to his work performance by his Lieutenant and immediate supervisor at the time. By way of explanation for his request, plaintiff stated he believed that *he* was being interrogated and that *he* was going to be disciplined. (Dep. at p. 97).

"The requirement that the [activity] at issue involve matters of public concern 'reflects both the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" <u>Ezekwo v. NYC Health & Hosp.</u>

Corp., 940 F.2d 775, 781 (2d Cir. 1991), cert. den. 502 U.S. 1013 (1991) (quoting

Connick v. Myers, 461 U.S. at 143.  Thus, in Saulpaugh v. Monroe Comm. Hosp., 4 F.3d

134 (2d Cir. 1993), the Court rejected the plaintiff's claims that her complaints to

supervisors regarding on the job sexual harassment constituted a matter of public

concern.  The Second Circuit Court of Appeals held that the employee's complaints

"were motivated by and dealt with her individual employment situation."  4 F.3d at 143.

Similarly, here, the record is bereft of any indication that plaintiff's claimed First

Amendment associational activity was motivated by anything other than his personal

employment situation and his wholly subjective feeling that legitimate questions by a

superior would result in discipline.

Moreover, plaintiff may not later "bootstrap" a personal grievance into an issue of

public concern by general reference to the popular interest in union activities.  See

Maples v. Martin, 858 F.2d 1546, 1553 n.12 (11th Cir. 1988); Ezekwo v. NYC Health &

Hospitals Corp., 940 F.2d at 781 (doctor's complaints were personal in nature and

generally related to her own situation within the hospital's residency program; fact that

one or two of doctor's statements related to matters of public concern would not taint the

nature of her statements); White Plains Towing Corp. v. Patterson,  991 F.2d 1049, 1059

(2d Cir.) cert. denied,114 S.Ct. 185 (1993).  "Even as to an issue that arguably could be

viewed as a matter of public concern, if the employee has raised the issue solely in order

to further his own employment interests, his First Amendment right to comment on that

issue is entitled to little weight.")

**b.     Private Jokes Do Not Rise To The Level of Public Concern.**

Plaintiff raised an additional alleged exercise of expressive associational activity or speech at his deposition that was not mentioned in his complaint. Plaintiff claims that he put a "politically colored" bumper sticker on Complex Warden Brian Murphy's state vehicle during the Rowland – Kennelly governor's race. (Dep. at p. 72-74.) Private, inside jokes that do not disseminate any information to the general public, do not enjoy First Amendment protection. <u>Tindle v. Caudell</u>, No. LR-C-93-540, 1994 WL 736400 (E.D.Ark. September 19, 1994) <u>aff'd</u> 56 F.3d 966 (8th Cir. 1995) (see attached); <u>Angle v. Dow</u>, 822 F.Supp. 1530, 1543 (S.D.Ala. 1993).

In <u>Tindle</u>, the court held that a police officer's termination did not violate his First Amendment expressional rights when the officer arrived at a Police Department's Halloween party dressed in "black face" because "[t]here is no evidence that plaintiff's actions were intended to provoke debate." <u>Tindle</u>, WL 736400 at *5.

Similarly, the court in <u>Angle</u> held that the plaintiff, a police officer, did not exercise protected speech when he wrote a memorandum criticizing the undercover surveillance activities of a fellow officer. The court held that the memorandum was a purely private affair because "Angle typed the memorandum as a joke, intended for circulation only to Brunson [the fellow officer] or her husband . . . . Angle's initial actions took place in a purely private setting, Angles behavior in typing the memorandum was a prank, and one with potentially serious consequences at that . . .Angle made no effort to communicate the contents of the memorandum to the public." <u>Angle</u>, 822

12

F.Supp. at 1543.  Even if Plaintiff did put a "politically colored" bumper sticker on Complex Warden Murphy's state vehicle as he alleges, this was a private joke and did not involve a public concern. (Dep. at p. 75) . Plaintiff does not claim that he was indicating support for any candidate, asserting his association with any political party, or expressing his belief on any social or political subject. (Dep. at p. 75). Further, Plaintiff said that he placed the bumper sticker on the vehicle as a private joke between himself and Complex Warden Murphy. (Dep. at p. 72).  Like the plaintiff in <u>Tindle</u>, Plaintiff here provides no evidence that the bumper sticker was intended to provoke political or social debate. Like the plaintiff's alleged expressive activity in <u>Angle</u>, Plaintiff's action was intended to be a joke, and was only intended to be between himself and Complex Warden Murphy.

Plaintiff, without any reasonable explanation, cites a meeting held among Complex Warden Murphy, defendant, plaintiff and CO Owens, plaintiff's union representative, to discuss the bumper sticker joke, as the springboard from which all his alleged subsequent harassment sprung.  (Dep. at pp. 72-76).  However, there is no evidence that plaintiff did or said anything during the "bumper sticker" meeting – nor did she ever mention the incident to plaintiff.  <u>Id</u>.

2.     **Even If Plaintiff's Claimed Activities Are Deemed To Be Protected, Plaintiff Fails to Produce Sufficient Evidence To Establish A Causal Connection Between Any Protected Speech/Expression And An Adverse Employment Action.**

a.     **Plaintiff Provides No Evidence That Any Of Defendant's Alleged Actions Rose To the Level of An Adverse Employment Action.**

Not everything that makes an employee unhappy is an adverse employment action that will support a retaliation claim. Sank v. The City University of New York, 219 F.Supp.2d 497, 503 (S.D.N.Y. 2002) citing Phillips v. Bowen, 278 F.3d 103, 117 (2d Cir. 2002). A plaintiff has not demonstrated that an employer's actions raise to the level of adverse employment actions unless he produces sufficient evidence that he had to endure a "materially adverse change in terms of conditions of employment." Id., citing Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000). A change in working conditions that is merely disruptive or inconvenient does not rise to the level of adverse.  Sank, 219 F.Supp.2d at 503. A pending discipline, or a reprimand that has been vacated, is not an adverse employment action. Yerdon v. Henry, 91 F.3d 370, 378 (2nd Cir. 1996); Wilson v. Consolidated Edison Company of New York, Inc., 2000 U.S. Dist. LEXIS 3895, 2000 WL 335733, at *8 n. 14 (S.D.N.Y. 2000); Garcia v. West, 1999 U.S. Dist. LEXIS 15274, 1999 WL 782563, at *4 (S.D.N.Y. 1999).

In Yerdon, the Second Circuit held that the plaintiff did not suffer an adverse employment action at the time of suit because the disciplinary charges filed against her were still under investigation. The court noted that "if the charges were ultimately

14

dismissed, [Plaintiff] Yerdon would not have suffered any adverse effect from them."
Yerdon, 91 F.3d at 378. Similarly the district court in Wilson held that the plaintiff there
did not suffer any adverse employment action "even if plaintiff was terminated based on
a reason that could be deemed pretextual," because plaintiff was reinstated to his
position. Wilson, 2000 WL 335733 at *8 n. 14. In Garcia, the court held that there was no
adverse employment action as a result of the plaintiff being charged with drug violations
because the plaintiff was later cleared of all charges. Garcia, 1999 WL 782563, at *4.

Here, plaintiff's temporary suspension from the Confined Space Rescue Team
("CSRT") in 1998, Captain McNally's comments on March 1, 2000, plaintiff's
counseling for the soda bottle bag incident, his removal from C.E.R.T. in November of
2000, the State Police investigation of the inmate's sexual assault/harassment charge
against plaintiff, and the untimely report regarding the inmate "shouldering" incident of
January 2, 2001 all do not rise to the level of adverse employment actions.

Plaintiff is time barred from claiming that his suspension from the Confined
Space Rescue Team in 1998 was an act of retaliation under §1983. The Court should
grant summary judgment as to this allegation for the additional reason that, similar to the
terminated plaintiff in Wilson, plaintiff here was reinstated to the team (Dep. at p. 70),
and so the suspension does not constitute an adverse employment action. The letter of
reprimand that Plaintiff received for the August 12, 2000 refusal to amend his report
regarding the soda bottles was also later vacated (Dep. at p. 123; Dep. Ex. 11), and so is
not an adverse employment action.

Soon after the McNally statement to plaintiff of March 1, 2000, Deputy Warden Labius conducted an investigation of the incident. (Dep. at p. 87). Plaintiff does not provide any evidence that McNally's statement in any way led to a materially adverse change in his employment conditions.  Indeed, plaintiff's grievance was filed on his behalf the day following the McNally incident and grievances were filed by him subsequently for each and every claimed retaliatory incident he identified.  Clearly, plaintiff's union activity was not chilled as a result of the McNally statement.

Plaintiff's reprimand for the August 26 and September 5, 2000 incidents, as well as the resulting temporary suspension from C.E.R.T. (he could reapply in one year), and temporary preclusion from applying to the Honor Guard, Canine Unit, and Special Operations Group, were also not adverse employment actions because, similar to the plaintiff's charges in Yerdon, the discipline's finality was still pending when plaintiff left and retired from the Department of Correction for unrelated reasons. Plaintiff testified at his deposition that he was told by Labor Relations personnel "[B]ehave for one year, and we will remove everything from your file . . . ." (Dep. at pp. 110-111).

Finally, the State Police investigation of the inmate's accusation that plaintiff sexually harassed/assaulted him (Dep. at p. 149), and the January 3, 2001 untimely report of the inmate "shouldering" incident (Dep. at p. 152), do not rise to the level of adverse employment action because plaintiff never received any discipline for either incident and his future employment was in no way affected.  The State Police investigation exonerated

plaintiff and any disciplinary proceeding relating to the untimely report filing was dropped.

Moreover, taking the incidents of retaliation plaintiff relates cumulatively, the total circumstances of his working environment cannot be viewed to have become "unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace" after applying an objective standard.  Petrario v. Cutler, 187 F. Supp. 2d at 32-33 (quoting Philips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).  The minor incidents which plaintiff alleges, even if true, simply cannot be reasonably seen as attaining the "critical mass of unreasonable inferiority."  Id.

Further, there is no record evidence that the one "classic" example of adverse action, the November 3, 2000 reprimand for insubordination following the two occasions when plaintiff refused to answer his Lieutenants' questions without union representation present, had any negative effect on the terms and conditions of plaintiff's employment. See Sanders v. New York City H.R. Admin, 361 F.3d 749, 755 (2d Cir. 2004)(requiring proof that a negative performance evaluation "had any effect on the terms and conditions of [plaintiff's] employment.")

>    **b.    Plaintiff Fails To Produce Sufficient Evidence To Establish A Causal Connection Between Any Alleged Protected Expression And An Adverse Employment.**

A defendant is also entitled to summary judgment if no reasonable jury could find a causal connection between the plaintiff's alleged protected expressive associational activities and the alleged adverse employment actions.  Such causal connection can be

established indirectly by showing that the protected activity was followed by adverse treatment in employment. <u>Cobb</u>, 363 F.3d at 107. However, a plaintiff must produce some tangible proof to demonstrate that his version of what occurred was not imaginary and may not rely on conclusory assertions of retaliatory motive to satisfy the causal link. <u>Id.</u>

          1.       **There is an insufficient temporal relation between Plaintiff's alleged exercise of expressive associational activity in 1998 and the alleged acts of retaliation two years later.**

Although the Second Circuit has not laid down a bright line test for when the adverse employment action must occur in relation to the alleged protected expressive associational activity, it must be temporally close enough so that a reasonable jury could infer that retaliation was a substantially motivating factor in the employment decision. <u>See</u> <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999); <u>Petrario v. Cutler</u>, 187 F.Supp.2d 26, 33 (D.Conn. 2002).

The Second Circuit in <u>Morris</u> held that no inference of retaliatory motivation could be justified after a time lapse of two years. <u>Morris</u>, 196 F.3d at 113, <u>citing</u> <u>Conner v. Schnuck Mkts., Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997) (four-month lag defeats inference of causation). More recently a district court has held that a time lapse of a year between the alleged protected activity and the adverse employment action is too long for an inference of retaliatory motivation. See <u>Petrario</u>, 187 F.Supp.2d at 33. (alleged protected expression occurred on May 2, 1990, first alleged adverse employment action, a furlough, was not until 1991).

Even if the Court finds that plaintiff's association involved a matter of public concern and even if the Court finds that plaintiff has produced sufficient evidence of some adverse employment action, defendant Jones is entitled to summary judgment because plaintiff has not produced sufficient evidence so that a reasonable jury could find a causal connection between his alleged protected expressive association or speech and any adverse employment actions. All of plaintiff's non time-barred allegations of disciplinary proceedings against him commenced two years after the 1998 associational expressive activities that Plaintiff claims marked the genesis of the alleged retaliation. (Dep. at p. 84). The bumper sticker incident, and the controversy over plaintiff's being qualified to be on the Confined Space Rescue Team occurred in 1998. (Dep. at pp. 65, 72.) Even if Plaintiff provided sufficient evidence that Captain McNally's statement on March 1, 2000 was an adverse employment action, this incident did not occur until the passage of two years from the alleged underlying expressive associational activity (Complaint ¶ 8). Nor is there evidence of defendant Jones' personal involvement in the McNally incident (or for that matter, in any of the incidents).  Plaintiff's other alleged acts of retaliation occurred even later. The disciplinary proceedings against Plaintiff for refusing to delete certain portions of his incident report on August 12, 2000, did not commence until late September, 2000 (Complaint ¶ 7). Plaintiff's temporary preclusion from applying to the Canine Unit, the Honor Guard, and the Special Operations Group also occurred in September and November of 2000 following his reprimand for the insubordinate incidents of refusing to answer questions put to him by Lt. Lalumiere and

Lt. Phaia. (Dep. at p. 41.) The inmate brought his sexual harassment charge against Plaintiff in January 2001 and the State Police investigation concluded January 17, 2001. (Dep. Ex. 14).  Finally, the incident with the counselor who "shouldered" Plaintiff occurred January 3, 2001. (Dep. at p. 151).  Discipline proceedings were thereafter dropped.

> **C.     Plaintiff Has Not Produced Any Tangible Proof That Defendant Had A Retaliatory Motive Against Defendant Relating To Any Claimed Event.**

A plaintiff must produce tangible proof to support his allegation that a defendant employer's motivation for commencing a disciplinary proceeding was retaliatory, "a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." Cobb, 363 F.3d at 108.

Plaintiff further claims that he faced retaliation for exercising his expressive associational rights regarding his refusal to follow a direct order of his Lieutenant on August 12, 2000, and his alleged request for union representation before answering the two Lieutenants' questions on August 26 and September 5, 2000. However plaintiff does not provide evidence that Lieutenant Lalumiere or Lieutenant Phaia acted outside of standard procedure when they commenced disciplinary proceedings against an employee who refused to provide a supervisor with timely work related information or refused to follow a direct order concerning incident reports.  Nor does plaintiff proffer any evidence linking the defendant to these incidents other than her position at BCI's chain of command.

**D.    DEFENDANT JONES IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EQUAL PROTECTION CLAIM**.

Plaintiff, almost parenthetically, includes an allegation in his Complaint that that the Defendant Jones "intentionally and maliciously" treated the plaintiff differently from other similarly situated Corrections Officers, in violation of his Fourteenth Amendment right to equal protection of the laws.  Compl., ¶ 18.  Plaintiff's Equal Protection Clause claim is wholly unmeritorious.

**1.    Plaintiff's Equal Protection Claim Coalesces With His First Amendment Claim**.

As this Court has observed, "[t]he Second Circuit has not recognized a right under the Equal Protection Clause to be free from retaliation based on union activity.  Indeed, the Second Circuit has held that no right exists under the Equal Protection Clause to be free from retaliation based on a complaint of race discrimination."  Petrario v. Cutler, et al., 187 F. Supp. 2d at 35 (citing Bernheim v. Litt, 79 F.3d 318, 323-24 (2d Cir. 1999).

When a "selective prosecution" Equal Protection claim is based on the same evidence as a First Amendment Retaliation claim, the two claims "coalesce" and the Equal Protection claim should be dismissed. Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (dismissing the plaintiff's Equal Protection claim because "all allegations in the complaint point to the conclusion that the discipline was in retaliation for Sergeant Edward's [Plaintiff's] exercise of his rights to free speech and freedom of association under the First Amendment"); see also Cobb,  363 F.3d at 110 ("Due to the

21

manner in which they have cast their contentions throughout this action, the plaintiffs'
selective prosecution and retaliation claims 'coalesce.'") (citations omitted); African
Trade & Information Center, Inc., 294 F.3d at 363 ("Plaintiff's factual allegations
throughout  the case require the conclusion that their Equal Protection claim and their
First Amendment claim coalesce.").  An Equal Protection claim cannot be premised upon
an expressive association retaliation claim. Petrario, 187 F.Supp.2d at 35.

Plaintiff claims that he was treated selectively because of his alleged exercise of
his speech or expressive associational rights. Plaintiff claims that he was subject to
unlawful disparate treatment when he was given a reprimand for refusing to give his
superior information about his unit activities on August 26 and September 5, 2000
(Complaint ¶ 13), was removed from C.E.R.T. and not eligible for other positions and
was temporarily suspended from the Confined Space Rescue Team in 1998 (Dep. at p.
165), and when the police investigated him following an inmate's accusation that
Plaintiff had sexually assaulted him (Dep. at p. 143). These are the same incidents that
Plaintiff claims form the basis of his retaliation allegation.

       **2.**      **Plaintiff Fails To Provide Evidence That Defendant's
Actions Were "Wholly Arbitrary" As Required For An
Olech Class of One Claim.**

To bring a "class of one" Equal Protection claim, a plaintiff must show evidence
that he was intentionally treated differently from similarly situated employees and that
there is no rational basis for the difference in treatment. African Trade & Information
Center, 294 F.3d at 362. The Plaintiff has the very significant burden of producing

sufficient evidence to show that there is no reasonably conceivable state of facts that

could provide a rational basis for his treatment. Bell v. Duperrault 367 F.3d 703, 708 (7th

Cir. 2004) ("it is not enough that the DNR [defendant] acted in a way that Bell [plaintiff]

believes to be ineffective or even destructive."). Mere rudeness is not enough. Id ("Were

our decision to the contrary, the judicial system would overflow with equal protection

claimants seeking damages for the discourteous treatment they received from various

public servants."). As with the "selective prosecution" claim under the Equal Protection

clause, the Olech class-of-one plaintiff must also provide evidence of being treated

differently from other substantially similarly situated employees. See African Trade &

Information Center, 294 F.3d at 363.  As with the claim of selective prosecution, Plaintiff

does not provide evidence of any similarly situated employees who were treated

differently from himself.

At his deposition, plaintiff identified two CO's who had been accused of sexual

assault on inmates at some time in the past but were not investigated by the State Police.

Dep. at pp. 156-159.  However, when pressed, plaintiff admitted that he did not know

whether the State Police had not investigated the other CO's "for a fact."  Id. at p. 159.

Plaintiff also identified his temporary removal in 1998 from the Confined Space

Rescue Team as the product of disparate treatment.  Plaintiff claimed that "there were

several other officers" who took time away from the facility but were not treated like

plaintiff was.  Dep. at p. 162.  Plaintiff did not know whether these CO's had 38 absences

in the prior year.  Id.  For the reasons set out above, the Court should award Defendant summary judgment on plaintiff's "class of one" claim.

Defendant is also entitled to summary judgment as to Plaintiff's class of one Equal Protection claim because Plaintiff has not provided sufficient evidence from which a jury could find that Defendant's actions were irrational and wholly arbitrary.

Plaintiff's 1998 temporary suspension was neither irrational nor wholly arbitrary. Plaintiff was absent from work 38 times prior to his temporary suspension.  (Dep. at p. 70). As the name suggests, the Confined Space Rescue Team was organized for the purpose of maintaining a safe environment within the correctional institution. (Dep. at p. 37).  Therefore, it was important that employees who hold positions on the team, which is considered an honor and whose membership is held to a higher standard of conduct, are dependable in terms of attendance. Defendant Jones acted rationally in implementing existing absentee policy when it came to her attention that Robinson had excessive absences.

Captain McNally's words to Plaintiff on March 2, 2000 may have been inappropriate, but they were not "wholly arbitrary or irrational as is required to make out an Equal Protection claim." Plaintiff had been in the department for over a decade and had not risen in the ranks (Dep. at p. 192).  Captain McNally knew that Plaintiff had recently decided to try to further his career (Dep. Ex. 7). Captain McNally was attempting to give Plaintiff advice to further his career aspirations (Dep. Ex. 7). Further, when this incident was brought to the attention of defendant Jones, she had Deputy

Warden Labius conduct an investigation. (Dep. at p. 87). Plaintiff provides no evidence that any aspect of the investigation was "wholly arbitrary or irrational."

A written reprimand was issued for the August 26, and September 5 incidents with Lieutenants Lalumiere and Phaia because plaintiff had refused to follow direct orders and was disrespectful. (Dep. Ex. 9).

Finally, when responding to the sexual harassment incident, defendant Jones advised the inmate's family to call the police because one of the inmates had accused plaintiff of assaulting him. (Dep. at p. 143). Plaintiff does not provide evidence that Jones failed to follow standard procedure advising the inmate victim's family to call the police, but even if she had, mere failure to follow procedure does not rise to the level of "irrational" and "wholly arbitrary" as is required to make out a class of one Equal Protection claim.  Plaintiff was exonerated as a result of the State Police investigation. (Dep. Ex. 14).

As to Plaintiff's removal from C.E.R.T., he asserts that he did not know whether there was a directive that mandates removal from the C.E.R.T. when a team member is under review for possible discipline.  (Dep. p. 135). He provides no evidence that his suspension was other than an automatic result of the pending disciplinary proceeding. He does say that the Deputy Commissioner, who has a superior position in the chain of command to Defendant Jones, told the head of C.E.R.T. that Plaintiff should be temporarily suspended from C.E.R.T. until the resolution of the pending disciplinary proceeding. (Dep. at p. 132.)

> **E.** **The Plaintiff Fails To Present Sufficient Evidence That Defendant Jones Was Personally Involved In Any Claimed Event Alleged To Have Resulted In A Constitutional Deprivation.**

It is settled law that in a civil rights action, a plaintiff must demonstrate the defendant's <u>direct</u> or <u>personal</u> involvement in the actions which are alleged to have caused the constitutional deprivation. <u>Rizzo v. Goode,</u> 423 U.S. 362, 376-78, 96 S. Ct. 598, 606-07 (1976); <u>Williams v. Smith,</u> 781 F. 2d 319, 323 (2d Cir. 1986); <u>U.S. Ex rel. Summer v. Dixon,</u> 524 F. Supp. 83, 85 (N.D.N.Y. 1981), <u>aff'd,</u> 709 F. 2d 173, 174 (2d Cir. 1983) (per curiam), <u>cert</u>. <u>denied,</u> 434 U.S. 1087 (1977); <u>Ellis v. Blum,</u> 643 F. 2d 68, 85 (2d Cir. 1981). Liability cannot be founded on official position alone. <u>Horowitz v. Anker,</u> 437 F. Supp. 495, 504 (E.D.N.Y. 1977), <u>aff'd mem.,</u> 578 F. 2d 1368 (2d Cir. 1978); <u>McKinnon v. Patterson,</u> 568 F. 2d 930, 934 (2d Cir. 1977), <u>cert</u>. <u>denied,</u> 434 U.S. 1087 (1977); <u>Williams v. Vincent,</u> 508 F. 2d 541, 546 (2d Cir. 1974). A public official can only be liable if the official causes the harm. <u>Baker v. McCollan,</u> 443 U.S. 137, 142, 99 S. Ct. 2689, 2693 (1979); <u>Vippolis v. Village of Haverstraw,</u> 768 F. 2d 40, 44 (2d Cir. 1985). "[T]here must be some showing of personal responsibility" to support an individual capacity damages claim. <u>Duchesne v. Sugarman,</u> 566 F. 2d 817, 830 (2d Cir. 1988); <u>McKinnon v. Patterson,</u> 568 F. 2d 930, 934 (2d Cir. 1977), <u>cert</u>. <u>denied,</u> 434 U.S. 1087 (1978) (emphasis added); <u>Ayers v. Coughlin,</u> 780 F.2d 205, 210 (2d Cir. 1985); <u>Alfaro Motors, Inc. v. Ward,</u> 814 F. 2d 883, 886 (2d Cir. 1987); <u>Gill v. Mooney,</u> 824 F. 2d 192, 196 (2d Cir. 1987). To have created a policy or custom under which there were unconstitutional practices, one must have "impliedly or tacitly authorized, approved or encouraged" the constitutional violation. <u>Turpin v. Mailet,</u> 619 F. 2d 196 (2d Cir. 1980),

cert. denied, 449 U.S. 1016, 101 S. Ct. 577 (1980); see also Rizzo v. Goode, 423 U.S. At 371-72.

"[W]hen a supervisor such as a prison superintendent is named as a defendant, that supervisor's involvement must be greater than 'mere linkage in the prison chain of command to give rise to § 1983 liability.'" Lipton v. County of Orange, New York, et al., 315 F. Supp. 2d 434, 459 (S.D.N.Y. 2004)(citing Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003)).  The Second Circuit has stated that personal involvement of a supervisor may be demonstrated by 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation , or 5) failure to act on information indicating that unconstitutional acts were occurring.  Hernandez v. Keane, 341 F.3d 137, 145 (2nd Cir. 1995)(citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiff relies solely on speculation and defendant's position in BCI's chain of command in his attempt to ensnare the defendant.  Further, plaintiff points to no constitutional injury for which defendant could be liable in any event.  See, e.g., Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986) ("A plaintiff must allege tangible connection between the acts of the defendant and injuries suffered.").

Here, plaintiff can point to no record evidence that the Defendant was "personally involved" in any of the claimed adverse employment actions other than as a result of her linkage in the chain of command at BCI.  See, e.g., Dep. at pp. 62, 103.

First, Plaintiff does not provide evidence that Defendant Jones knew that Captain McNally was going to approach Plaintiff to discuss Plaintiff's talking with Frechette on March 2, 2000. Further, when plaintiff filed an Incident Report concerning the Captain McNally incident, plaintiff acknowledges there was an internal investigation of the incident. (Dep. at p. 87). Plaintiff does not provide any evidence that this investigation was in any way procedurally deficient to the point of constituting a "failure to act" or "deliberate indifference."

Similarly, Plaintiff does not provide any evidence that defendant Jones told or instructed both Lieutenant Lalumiere and Lieutenant Phaia to deny plaintiff's request for union representation on either August 26 or September 5, 2000 in the course of addressing questions to plaintiff.  Plaintiff asserts that his "proof" of defendant's involvement was the fact that he "requested a union steward repeatedly" and did not receive one.  (Dep. at p. 104).  Further plaintiff provides no evidence that defendant Jones was reckless in allowing Lieutenant Lalumiere and Lieutenant Phaia to supervise plaintiff.  Plaintiff's assertion that "for Lieutenant Lalumiere if it's not in black and white, it doesn't happen," (Dep. at p. 195), suggests that, contrary to plaintiff's assertion, Lieutenant Lalumiere generally acted responsibly and within the union contract.  There is absolutely no evidence of defendant Jones personal involvement in any claimed deprivation here.[1]

---

[1]    In paragraph 6 of his Complaint, plaintiff alleges that the defendant conspired with McNally, Martin and Lalumiere.  See also Dep. Ex. 3A at p. 2.  There is nothing in the record to support this vague, conclusory allegation and it should be dismissed.  *See, e.g.,* Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977)("conclusory", "vague" or general allegations of conspiracy will be dismissed).

28

#### F.    IN ANY EVENT, THE DEFENDANT JONES IS ENTITLED TO QUALIFIED IMMUNITY FROM SUIT FOR HER ALLEGED ACTIONS.

The defendant in this case, by virtue of her status as a public official who must be allowed to do her job in good faith without fear of being liable for damages each time a decision is made on behalf of the State, is clothed with qualified immunity in civil rights actions.  Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, supra at 818.  In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that her actions were lawful.  Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980);  Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact, the Supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate cases.  See Harlow v. Fitzgerald, supra; see also Rivera v. Senkowski, 62 F.3d 80 (2nd Cir. 1995).  Once a trial is held, it is too late to vindicate the important purpose of qualified immunity, that is, allowing the public official to avoid standing trial.  Mitchell v. Forsyth, 472 U.S. 511, 527 (1985).

In the instant case, the question is whether the defendant should have known that her specific actions violated the plaintiff's constitutional rights. Lewis v. Cowen, 165 F.3d 154, 167 (2nd Cir. 1999); Williams v. Greifinger, 97 F.3d 699 (2nd Cir. 1996). The test is one of objective reasonableness under the particular facts. Oliveira v. Mayer, 23 F.3d 642, 648-49 (2nd Cir. 1994). Moreover, plaintiff must have affirmative evidence from which a jury could find that the plaintiff has carried his burden of proving the pertinent personal motive. Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 759, 140 L.Ed.2d 759 (1998). As previously demonstrated, the defendant in this case acted in her capacity as BCI's warden in accordance with Department of Correction policy and directives. Plaintiff had at all times the grievance process available to him to test any discipline that the defendant's subordinates may have handed down. There is no evidence that the defendant Jones acted improperly or with a personal animus. Jones mere presence at the meeting when plaintiff's bumper sticker joke on Warden Murphy was discussed is not "proof" by any stretch of a personal animus harbored by Jones against Robinson. By plaintiff's own account, the defendant neither did anything nor said anything at this meeting. The record is bereft of any evidence regarding personal animus on Jones' part. Conclusory allegations which are the product of an imagination cannot substitute for such evidence.

Further, and in any event, as has been shown above, plaintiff has failed to provide sufficient evidence to support his claim that any of his constitutional rights were violated. In the absence of a violation of a constitutional right, defendant is entitled to qualified immunity as a matter of law. See McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272 (2d Cir. 1999)("where there is a 'total absence of evidence of retaliation' there is no basis on which to conclude that the defendant seeking qualified immunity violated

clearly established law.")(quoting <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 33 (2d Cir. 1998)(<u>per curiam</u>).

Should any portion of this Complaint survive the Motion for Summary Judgment currently under consideration, then the defendant respectfully reserves the right to prove her immunities and privileges which appertain here at trial.

First, Plaintiff does not provide evidence that Defendant Jones knew that Captain McNally was going to approach Plaintiff to discuss Plaintiff's talking with Frechette. Further, when plaintiff filed an Incident Report concerning this incident, Plaintiff acknowledges there was an internal investigation of the incident. (Plaintiff's Dep. at 87). Plaintiff does not provide any evidence that this investigation was in any way procedurally deficient to the point of constituting a "failure to act."

Similarly, Plaintiff does not provide any evidence that Defendant Jones told Lieutenant Lalumiere  to deny Plaintiff's request for union representation on either August 26 or September 5, 2000. Plaintiff asserts that his "proof" of her involvement was the fact that he "requested a union steward repeatedly" and did not receive one. (Plaintiff's Dep. at 104.) Further Plaintiff provides no evidence that Defendant Jones was reckless in letting Lieutenant Lalumiere supervise Plaintiff. Plaintiff's assertion that "for Lieutenant Lalumiere if it's not in black and white, it doesn't happen," (Plaintiff 's Dep. at 195), suggests that, contrary to Plaintiff's assertion, Lieutenant Lalumiere generally acted responsibly and within union contract.  There is absolutely no evidence of Defendant Jones personal involvement in any claimed deprivation here.

**IV.**      <u>**CONCLUSION**</u>

For all of the foregoing reasons, defendant Rosetta Jones respectfully requests that this Court grant summary judgment in her favor.

DEFENDANT
ROSETTA JONES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:      _____
Eric Horan, Law Student Intern
Office of the Attorney General and

Edward F. Osswalt
Assistant Attorney General
Federal Bar No. ct15252
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel.:  (860) 808-5340
Fax:  (860) 808-5383
E-mail: Edward.Osswalt@po.state.ct.us

**<u>CERTIFICATION</u>**

I hereby certify that the foregoing Memorandum of Law in Support of

Defendant's Motion for Summary Judgment was mailed first class, postage pre-paid, on

this _____ day of October, 2004 to the following:

John Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510
Tel.: (203) 562-9931
Fax: (203) 776-9494

_____
Edward F. Osswalt
Assistant Attorney General

33