UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHRISTOPHER ROBINSON            :

VS.                             :       NO. 3:02CV1470(CFD)

ROSETTA JONES                   :       OCTOBER 31, 2004

**BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The plaintiff was a Correctional Officer employed for many years by the

Connecticut Department of Correction at its Brooklyn facility where the defendant

Jones was the Warden.[1]  The plaintiff brought this action against the defendant

in her individual capacity, pursuant to 42 U.S.C. § 1983, alleging that she

intentionally punished him for exercising rights protected by the First Amendment

and that she irrationally and intentionally subjected him to a pattern of adverse

treatment materially worse than that given to similarly-situated co-workers, in

violation of the Equal Protection Clause of the Fourteenth Amendment.

The defendant has moved for summary judgment.  She makes several

arguments.  She alleges that none of the plaintiff's activities was protected by the

First Amendment, that those activities were not the cause of her actions against

---

[1]  Both parties have subsequently retired.

the plaintiff, that the officers whom the plaintiff asserts were treated more favorably than he were not similarly situated to him, that her disparate treatment of the plaintiff was neither irrational nor arbitrary, that all the bad things that happened to the plaintiff were the doing of others,[2] and that she is entitled to qualified immunity because there was no reason for her to have known that her actions violated the plaintiff's constitutional rights.

**Standard of Review**

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any

---

[2] The defendant has not submitted an affidavit in support of this or any other of her claims.

evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak

v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994).  The court must construe the

evidence in the light most favorable to the party opposing summary judgment

and deny the motion unless no construction of the evidence could support

judgment in the plaintiff's favor.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157

(1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993);

United States v. Certain Funds on Deposit in Scudder Tax Free Investment

Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United

States, 5 F.3d 523, 525 (Fed. Cir. 1993).  "If, as to the issue on which summary

judgment is sought, there is any evidence in the record from which a reasonable

inference could be drawn in favor of the opposing party, summary judgment is

improper."  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary

judgment motion, the opponent need not match, item for item, each piece of

evidence proffered by the moving party.  So long as the opponent has offered

enough evidence to exceed the "mere scintilla" threshold, summary judgment is

to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court

may not "weigh" the evidence and must proceed with the greatest caution.  R. B.

Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds

could differ as to the import of the evidence...and if...there is any evidence in the

4

record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

     "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

     "[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

**The Facts**

The relevant facts, derived from the evidence submitted by the defendant and by the plaintiff in their papers respecting the present motion and delineated in the plaintiff's Local Rule 56 Statement, are these:

As Warden of the Brooklyn Correctional Institution, the defendant ran a very tight ship.  No supervisor was permitted to impose any sort of discipline without her authorization in advance.  Thus, any discipline of any kind that was imposed upon the plaintiff was imposed at the direction of the defendant. (Plaintiff's deposition transcript, pp. 125-26)

During the first week of August, 2000, the plaintiff became aware that soda bottles in plastic bags were lying on the floor in a closet where the outside light switches for the prison were located.  This is a location necessarily frequented by correctional officers in the course of their duties and the presence of the bottles created a physical hazard to the officers.  The plaintiff immediately reported this hazard to Lt. John Bell.  (Plaintiff's interrogatory answers, ¶ 4) When the plaintiff subsequently suffered an injury because of the refusal to remove the aforesaid hazard, he included in his injury report the fact that he had reported the dangerous condition as stated above.  He was ordered by Lt. Lalumiere to remove that disclosure from his report.    Lt. Lalumiere could not have issued such an order without the authorization of the defendant, and

6

therefore the defendant knew of and authorized that directive.  (Id., ¶¶ 5, 6)

When the plaintiff refused to remove the disclosure from his report, he was given

a written discipline at the order of the defendant.  (Plaintiff's deposition transcript,

pp. 94, 121)

     The plaintiff's complaint concerning this matter, and his subsequent

inclusion of that information in his written report, were protected speech on an

issue of worker safety protected by 29 U.S.C. § 651(c).  (Exhibit A, official report

to Capt. Ford by John Boyle, dated 9/30/00)  The punishment imposed by the

defendant upon the plaintiff because of that OSHA-protected report was ordered

set aside after an investigation by the State Labor Relations unit, the State's

Attorney, the State Ethics Commission and State Senator Prague.  (Ibid.)

Thereafter, the defendant's subordinate supervisors began an obvious effort to

set the plaintiff up for further discipline, which conduct was the subject of a

"whistle blower" report by Union Steward John Boyle.  (Ibid.)

     The defendant openly undertook a personal vendetta against the plaintiff.

She and subordinates acting under her direction so openly harassed the plaintiff

that his union representative filed a sworn complaint objecting to it.   The

defendant personally interceded to reject that complaint although she was its

subject.  (Ibid.; Exhibit D)

     On November 3, 2000, the plaintiff was subjected to a written reprimand

7

for exercising his First Amendment associational rights.  That written reprimand was issued at the direction of the defendant.  (Plaintiff's Interrogatory Answers, submitted by defendant as Exhibit 3, ¶ 8)  Even earlier, on September 29, 2000, the defendant had telephoned both Major Bruce Bussiere and Captain Ken Davis to demand that the plaintiff be removed from C.E.R.T. and other specialized units within the Department of Correction.  This action was documented at the time in an official Incident Report prepared by the plaintiff. (Id., ¶ 9; Plaintiff's deposition transcript, p. 129; Exhibit C)

The defendant caused the plaintiff to be removed from the Tactical Operations Unit, from the selection process for SOG and K9 Unit, and from the Confined Space Rescue Team.  (Plaintiff's Interrogatory Answers, submitted by defendant as Exhibit 3, ¶ 11)

Membership in the C.E.R.T. team carried with it a great deal of prestige in the Department of Correction.  It was considered an honor to be serving in that unit.  (Plaintiff's deposition transcript, p. 38)

The plaintiff had applied for membership in the canine unit.  Membership in that unit would have given him a great deal of overtime and thus would have increased his pay significantly.  He was blocked from joining on the incorrect basis that he had used more than 8 sick days in the year.  Yet another officer, who had used more than 8 sick days on multiple occasions within the year, was

8

permitted to join.  (Id., pp. 39-40)

The defendant removed the plaintiff from the Confined Space Rescue Team without even telling him.  When he found out about it and asked her why she had done that to him, she stated that her reason was that he had been sick or absent from the prison thirty-eight times.  She subsequently made that assertion in writing.  The assertion was false.  (Id., pp. 67-69)  The defendant knew that the plaintiff had used only eight sick days in that time period.  She added his contractually-authorized vacations to his sick days in order to come up with the 38-day allegation.  She did this knowing the truth, for the specific purpose of removing him from the C.E.R.T. unit.  The plaintiff was the only corrections officer whose use of contractually-approved vacation time was used against him by the defendant.  Every other member of the C.E.R.T. unit had used his vacation and personal leave days in the same way the plaintiff had, but none of them was removed from the unit by the defendant.  She did this only to the plaintiff although all the members of the unit had done the same thing.  (Id., pp. 76-77, 162-63)

At the beginning of January, 2001, the defendant attempted to have the plaintiff arrested when he was falsely accused by an inmate of sexual harassment.  She violated administrative directives of the Department of Correction in attempting to do so.  Pursuant to department directives, whenever

9

an accusation is made against a corrections officer by an inmate, the warden is supposed to conduct an administrative investigation.  The defendant has done so in all other instances of accusations of sexual misconduct made by inmates against corrections officers.  She did not do so in the case of the plaintiff. Instead, she conducted no investigation, advised the inmate's family to contact the State Police, skipped the departmental chain of command and called the State Police, and stated to the investigating trooper that she considered the plaintiff guilty and that the plaintiff should be arrested.  (Plaintiff's interrogatory answers, ¶¶ 11, 12; Plaintiff's deposition transcript, pp. 144-51, 155-56)   When two other corrections officers under her command were accused by inmates of sexual misconduct – a more serious charge than that brought against the plaintiff – the defendant followed proper procedure and had an internal investigation conducted.  She intentionally did not do so in the case of the plaintiff, thus treating him differently from two other similarly-situated officers.  (Plaintiff's Interrogatory Answers, ¶¶ 13, 14; Plaintiff's deposition transcript, pp. 154-59) The plaintiff's union representative filed a written grievance, under oath, complaining that the plaintiff was treated differently from all other corrections officers in the manner in which the defendant handled the sexual harassment complaint described above.  (Exhibit B)

**The Plaintiff Suffered Adverse Employment Actions for Speech and Association on Matters of Public Concern**

The genesis of the defendant's vendetta against the plaintiff appears to be his compliance with OSHA requirements in reporting a physically hazardous condition affecting the safety of employees at the Brooklyn Correctional Institution and his refusal to retract that report when ordered to do so.  The Second Circuit has held that both association and speech of government employees, to be protected under the First Amendment, must involve matters of public concern.  Cobb v. Pozzi, 353 F.3d 89, 102-05 (2nd Cir. 2004); Heil v. Santoro, 147 F.3d 103, 109-10 (2d Cir. 1998).  Compliance with OSHA safety requirements clearly is a matter of public concern.

"[W]hen the Supreme Court in its cases establishing and bounding the rights of public employees to exercise free speech limited those rights to speech on matters of 'public concern,' they did not mean matters of transcendent importance, such as the origins of the universe or the merits of constitutional monarchy; they meant matters in which the public might be interested, as distinct from wholly personal grievances -- which whether or not protected by the First Amendment are too remote from its central concerns to justify judicial interference with the employment relation, Connick v. Myers, 461 U.S. 138, 147 (1983) -- and casual chit-chat, which is not protected by the First Amendment at

all.  Swank v. Smart, 898 F.2d 1247, 1251 (7th Cir. 1990)."  Dishnow v. School

Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996) (Posner, C.J.).  Thus, the

plaintiff in Brown v. Disciplinary Committee of Edgerton Volunteer Fire Dept., 97

F.3d 969 (7th Cir. 1996), engaged in protected free speech when he publicly

criticized a decision to change the name of the "Edgerton Fire Department" to

"Edgerton Fire District."  And a public employee fired because she reported an

incident of sexual harassment had in so complaining spoken on a matter of

public concern.  Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997).

      The public complaint of a female employee about the governmental

employer's assertedly inadequate response to sexual harassment issues in the

workplace is on a matter of public concern and thus protected.  Schuler v. City of

Boulder, 189 F.3d 1304, 1308 (10th Cir. 1999).  A highway department

employee's memorandum to his supervisor concerning traffic safety and snow

removal at a particular intersection, although obviously related to the work of the

agency, also was on a matter of public concern and protected.  Lee v. Nicholl,

197 F.3d 1291 (10th Cir. 1999).  Complaints by an employee of a public agency

"relating to...alleged mismanagement of government funds and violations of [the

agency's] bylaws...are clearly matters of public concern."  Gorman-Bakos v.

Cornell Cooperative Extension of Schnectady County, 252 F.3d 545, 553 n. 4

(2nd Cir. 2001).  Cf., Vasbinder v. Scott, 976 F.2d 118, 119-20 (2nd Cir. 1992);

Keyser v. Sacramento City Unified Sch. Dist., 238 F.3d 1132, 1137 (9th Cir.

2001); Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir.), *cert. denied*,

515 U.S. 1161 (1995).

Courts have held public employee speech to have been on matters of

"public concern" when a laborer accused the mayor and his subordinates of

unlawful and corrupt practices, Johnson v. Ganim, 342 F.3d 105 (2nd Cir. 2003);

when a police officer told a newspaper reporter about an attempted cover-up by

fellow officers, Markos v. City of Atlanta, 364 F.3d 567 (5th Cir. 2004); where

agents of the Department of Justice spoke about alleged negligence of their

supervisors during a murder investigation and alleged stealing of files from a

locked filing cabinet, Rivera-Jimenez v. Pierluisi, 362 F.3d 87 (1st Cir. 2004);

where a deputy district attorney sent a memorandum to supervisors alleging that

a deputy sheriff had included false statements in a search warrant affidavit,

Ceballos v. Garcetti, 361 F.3d 1168 (9th Cir. 2004); where an assistant principal

had alleged racial discrimination in the discipline of black public school students,

Love-Lane v. Martin, 355 F.3d 766 (4th Cir. 2004); where police officers were

fired after alleging that a fellow officer had used unreasonable force in an arrest,

Taylor v. Keith, 338 F.3d 639 (6th Cir. 2003); where a town secretary had asked

state officials whether a job posting in her office complied with state statutes,

Aquavia v. Goggin, 208 F. Supp. 2d 225 (D. Conn. 2002); where a prison

physician had complained about abuses of inmates, <u>Allen v. Iranon</u>, 283 F.3d 1070 (9th Cir. 2002); where a teacher had criticized the school district's special education programs, <u>Settlegoode v. Portland Public Schools</u>, 371 F.3d 503 (9th Cir. 2004); where county employees had spoken publicly about actions by the president of the county board of supervisors, including putting his girlfriend on the county payroll and his use of county resources to pave the private road of a friend, <u>Gentry v. Lowndes County</u>, 337 F.3d 481 (5th Cir. 2003); where a city employee had spoken to city investigators about a coworker's claim that she had been sexually harassed by the employee's supervisor, <u>Hensley v. Horne</u>, 297 F.3d 344 (4th Cir. 2002); where a medical resident at a public university questioned his supervisor's billing practices, <u>Ostad v. Oregon Health Sciences University</u>, 327 F.3d 876 (9th Cir. 2003); where the director of the school district's gifted education program advocated changes in the program in order to eliminate racial discrimination, <u>Peters v. Jenney</u>, 327 F.3d 307 (4th Cir. 2003); where a physician employed by a city hospital criticized layoffs of other physicians, <u>Ulrich v. City and County of San Francisco</u>, 308 F.3d 968 (9th Cir. 2002); where a town employee questioned the town council's decision to hire a town official and challenged the reasonableness of that official's salary, <u>Gazarkiewicz v. Town of Kingsford Heights</u>, 359 F.3d 933 (7th Cir. 2004); where a village police officer complained to the Judicial Inquiry Board about the handling of a criminal charge

14

against the son of the city prosecutor, McGreal v. Ostrov, 368 F.3d 657 (7th Cir. 2004); where a state prison employee publicly disclosed her observations of conduct by prison guards which was consistent with traffickiing in contraband, Spiegla v. Hull, 371 F.3d 928 (7th Cir. 2004); where a street department employee accused the city administration of not knowing what it was doing from day to day, Wainscott v. Henry, 315 F.3d 844 (7th Cir. 2003); and where a carpenter cooperated in a police criminal investigation of other employees of his department, DiMartino v. Richens, 263 Conn. 639 (2003).

"[P]laintiffs' interest in communicating ethnic pride as members of the NYPD is not necessarily a matter only of private concern.  A statement is of public concern if, in light of 'the content, form and context of [that] statement, as revealed by the whole record,' it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'...The parades in which plaintiffs seek to march...are themselves about ethnic pride and celebrating ethnic participation in the civic life of New York City."  Latino Officers Association, New York, Inc. v. The City of New York, 196 F.3d 458, 466 (2d Cir. 1999).  Citing Connick v. Myers, 461 U.S. 138, 146 (1983); Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).

**There is Sufficient Evidence of a Causal Connection Between the Plaintiff's First Amendment Activity and the Defendant's Adverse Employment Actions Against Him**

The plaintiff's protected First Amendment activity, as noted above, took place in August and the retaliation began in earnest in September.[3] It thereafter continued without interruption into the following year. All of these events, of course, took place within the applicable statute of limitations.[4]

Temporal proximity is not necessary to a case of retaliation, although it is a common method of proof. "What is most revealing of the true intention behind the [adverse employment action] is the timing." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.). When temporal proximity has been used as the method of proving a causal relationship between the protected activity and the adverse employment action, a period of less than two months, as in this case, always has been held sufficient. "In order to defeat a motion for summary judgment addressed to a claim of retaliation..., the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected participation or opposition..., (2) that the employer was

---

[3]  The defendant's brief refers also to earlier incidents, but those are not a part of the plaintiff's constitutional claim here.

[4]  The statute of limitations is three years. Lounsbury v. Jeffries, 25 F.3d 131, 133 (2nd Cir. 1994).

aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action....The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff complained to management and ten days after she filed complaint with state human rights office established *prima facie* case of causal relationship); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (discharge less than three months after complaint filed and less than one month after service upon employer established *prima facie* case); Sitar v. Indiana Dept. Of Transportation, 344 F.3d 720, 728 (7th Cir. 2003) (discharge more than three months after filing complaint).  In Sitar, *supra*, the court further held that "even if we thought that there was insufficient evidence of causation..., lack of causation should not have been the district court's sole basis for granting summary judgment....[F]or a plaintiff proceeding under the indirect method, causation [is] no longer...a part of her prima facie burden."  344 F.3d at 729.

    In this case, there is more than sufficient evidence of proximate cause to

defeat summary judgment.

## The Plaintiff's Evidence is Sufficient to Establish an Equal Protection Violation by the Defendant

Even if the plaintiff were unable to establish that the adverse treatment he received from the defendant was motivated by his exercise of First Amendment rights, the evidence still would support a verdict in his favor on his Fourteenth Amendment equal protection claim.  To establish this claim, the plaintiff need not show an improper motivation; he need show only that he was knowingly treated differently from others similarly situated and that this disparate treatment had no reasonable basis.

Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000), endorsing the concept of equal protection for the so-called "class of one" and emphatically rejecting any idea that motivation is relevant to the equal protection analysis, held:  "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  120 S. Ct. at 1074.  A plaintiff must show (1) disparate treatment and (2) lack of a rational basis for the disparity.  528 U.S. at 564.  See DeMuria v. Hawkes, 328 F.3d 704, 707 (2nd Cir.

2003); Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001); Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001); Longmoor v. Nilsen, 285 F. Supp. 2d 132, 137 (D. Conn. 2003); Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002); Barstow v. Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002); Oneto v. Town of Hamden, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001).

The evidence in this case, taken in the light most favorable to the plaintiff's position, supports an equal protection claim under this analysis. The plaintiff had applied for membership in the canine unit but was blocked from joining on the ground that he had used more than 8 sick days in the year. Yet another officer, who had used more than 8 sick days on multiple occasions within the year, was permitted to join. The defendant removed the plaintiff from the Confined Space Rescue Team for the stated reason that he had been sick or absent from the prison thirty-eight times. The defendant knew that the plaintiff had used only eight sick days in that time period. She added his contractually-authorized vacations to his sick days in order to come up with the 38-day allegation. The plaintiff was the only corrections officer whose use of contractually-approved vacation time was used against him by the defendant. Every other member of the C.E.R.T. unit had used his vacation and personal leave days in the same way the plaintiff had, but none of them was removed

19

from the unit by the defendant.  She did this only to the plaintiff although all the members of the unit had done the same thing.

At the beginning of January, 2001, the defendant attempted to have the plaintiff arrested when he was falsely accused by an inmate of sexual harassment.  She violated administrative directives of the Department of Correction in attempting to do so.  Pursuant to department directives, whenever an accusation is made against a corrections officer by an inmate, the warden is supposed to conduct an administrative investigation.  The defendant has done so in all other instances of accusations of sexual misconduct made by inmates against corrections officers.  She did not do so in the case of the plaintiff. Instead, she conducted no investigation, advised the inmate's family to contact the State Police, skipped the departmental chain of command and called the State Police, and stated to the investigating trooper that she considered the plaintiff guilty and that the plaintiff should be arrested.  When two other corrections officers under her command were accused by inmates of sexual misconduct – a more serious charge than that brought against the plaintiff – the defendant followed proper procedure and had an internal investigation conducted.  She intentionally did not do so in the case of the plaintiff, thus treating him differently from two other similarly-situated officers.  The plaintiff's union representative filed a written grievance, under oath, complaining that the

plaintiff was treated differently from all other corrections officers in the manner in which the defendant handled the sexual harassment complaint described above.

**The Defendant Has Not Even Attempted to Refute the Plaintiff's Evidence of Her Personal Involvement in the Violation of His Rights**

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

In this case, the plaintiff has presented evidence of the defendant's personal involvement in the violation of his rights. *Supra*, pp. 6-10. The defendant, however, has offered the court nothing on this subject. She has not submitted an affidavit, nor has she submitted any other evidence, claiming a lack of personal involvement. Her argument on this topic is frivolous.

21

**The Defendant's Claim of Qualified Immunity Has No Support
in the Evidence**

"A government official sued in his individual capacity is entitled to qualified
immunity (1) if the conduct attributed to him is not prohibited by federal law...; or
(2) where that conduct is so prohibited, if the plaintiff's right not to be subjected
to such conduct by the defendant was not clearly established at the time of the
conduct...; or (3) if the defendant's action was objectively legally reasonable in
light of the legal rules that were clearly established at the time it was taken."
O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations,
quotation marks and ellipses omitted).

The burden of pleading and proving a qualified immunity defense rests
squarely and exclusively upon the defendant.  Gomez v. Toledo, 446 U.S. 635,
640 (1980); Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Schechter v.
Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Black v.
Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Castro v. United States, 34 F.3d 106,
111 (2d Cir. 1994).  The defendant in this case has made no attempt to shoulder
that burden.  She has not submitted an affidavit.  She has not made, and cannot
make, any legal argument that the law itself was not clearly established as to
either the First Amendment retaliation claim or the Fourteenth Amendment equal
protection claim.

22

**Conclusion**

The motion for summary judgment should be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Edward F. Osswalt, Esq.,
Assistant Attorney General, P.O. Box 120, Hartford, CT 06141.

_____
JOHN R. WILLIAMS

_____