

FILED

2004 NOV -3 A 9: 13

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER ROBINSON | : |
| VS. | :     NO. 3:02CV1470(CFD) |
| ROSETTA JONES | :     OCTOBER 31, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

**A**     ***RESPONSE TO DEFENDANT'S CLAIMS OF FACT***

1. Agree.
2. Agree.
3. Agree.
4. Agree.
5. Agree.
6. Agree.
7. Agree.
8. Agree.
9. Agree.
10. Agree.
11. Agree.
12. Agree.

1

    13. Agree.

    14. Agree.

    15. Agree.

    16. Disagree. The defendant removed the plaintiff from the Confined Space Rescue Team without even telling him. When he found out about it and asked her why she had done that to him, she stated that her reason was that he had been sick or absent from the prison thirty-eight times. She subsequently made that assertion in writing. The assertion was false. The defendant knew that the plaintiff had used only eight sick days in that time period. She added his contractually-authorized vacations to his sick days in order to come up with the 38-day allegation. She did this knowing the truth, for the specific purpose of removing him from the C.E.R.T. unit. The plaintiff was the only corrections officer whose use of contractually-approved vacation time was used against him by the defendant. Every other member of the C.E.R.T. unit had used his vacation and personal leave days in the same way the plaintiff had, but none of them was removed from the unit by the defendant. She did this only to the plaintiff although all the members of the unit had done the same thing. (Plaintiff's deposition transcript, pp. 67-69, 76-77, 162-63)

    17. Agree that the plaintiff was restored to the C.E.R.T. when the defendant's lies were established. Otherwise, disagree. (Ibid.)

2

18. Agree.

19. Agree.

20. Agree.

21. Agree.

22. Agree.

23. Agree.

24. Disagree with the claim that plaintiff "attempt[ed] to supersede Lieutenant Lalumiere's authority" and with any implication that this incident constituted anything other than retaliation by the defendant for the plaintiff's exercise of protected First Amendment rights. (Plaintiff's Interrogatory Answers, ¶¶ 4, 5, 6; Plaintiff's deposition transcript, pp. 94, 121; Exhibit A)

25. Agree.

26. Agree.

27. Disagree with the implication of the word "refused" since plaintiff was only invoking his rights under the collective bargaining agreement. Otherwise, agree.

28. Agree.

29. Agree that the plaintiff was suspended. However, he was suspended before issuance of the Loudermill notice, so that was not the reason for his suspension. The true reason was defendant's ongoing persecution of the

3

plaintiff. (Plaintiff's deposition transcript, pp. 138-39)

30. Agree that those statements were made by Martin at the direction of the defendant. Disagree with any implication that the statements were true.

31. Agree.

32. Agree.

33. Agree.

34. Agree.

35. Agree.

36. Agree.

37. Agree.

38. Agree.

39. Agree.

40. Agree.

41. Agree.

42. Agree.

**B    PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

1. The defendant gave directives to her subordinates, Dan Martin, Pat Lalumiere and Frank McNally, to discipline the plaintiff. (Plaintiff's Interrogatory Answers, submitted by defendant as Exhibit 3, ¶ 2(b))

2. When Captain McNally, one of the defendant's subordinates, criticized the plaintiff for associating with union activists, his criticism of the plaintiff was admitted by him in the defendant's presence. (Id., ¶ 3(b))

3. During the first week of August, 2000, the plaintiff became aware that soda bottles in plastic bags were lying on the floor in a closet where the outside light switches for the prison were located. This is a location necessarily frequented by correctional officers in the course of their duties and the presence of the bottles created a physical hazard to the officers. The plaintiff immediately reported this hazard to Lt. John Bell. (Id., ¶ 4)

4. When the plaintiff subsequently suffered an injury because of the refusal to remove the aforesaid hazard, he included in his injury report the fact that he had reported the dangerous condition as stated above. He was ordered by Lt. Lalumiere to remove that disclosure from his report. Lt. Lalumiere could not have issued such an order without the authorization of the defendant, and therefore the defendant knew of and authorized that directive. (Id., ¶¶ 5, 6)

5. When the plaintiff refused to remove the disclosure from his report, he was given a written discipline at the order of the defendant. (Plaintiff's deposition transcript, pp. 94, 121)

6. The plaintiff's complaint concerning this matter, and his subsequent inclusion of that information in his written report, were protected speech on an

5

issue of worker safety protected by 29 U.S.C. § 651(c). (Exhibit A, official report to Capt. Ford by John Boyle, dated 9/30/00)

7. The punishment imposed by the defendant upon the plaintiff because of that OSHA-protected report was ordered set aside after an investigation by the State Labor Relations unit, the State's Attorney, the State Ethics Commission and State Senator Prague. (Ibid.)

8. Thereafter, the defendant's subordinate supervisors began an obvious effort to set the plaintiff up for further discipline, which conduct was the subject of a "whistle blower" report by Union Steward John Boyle. (Ibid.)

9. The defendant openly undertook a personal vendetta against the plaintiff. She and subordinates acting under her direction so openly harassed the plaintiff that his union representative filed a sworn complaint objecting to it. The defendant personally interceded to reject that complaint although she was its subject. (Ibid.; Exhibit D)

10. On November 3, 2000, the plaintiff was subjected to a written reprimand for exercising his First Amendment associational rights. That written reprimand was issued at the direction of the defendant. (Plaintiff's Interrogatory Answers, submitted by defendant as Exhibit 3, ¶ 8)

11. On September 29, 2000, the defendant telephoned both Major Bruce Bussiere and Captain Ken Davis to demand that the plaintiff be removed from

C.E.R.T. and other specialized units within the Department of Correction. This action was documented at the time in an official Incident Report prepared by the plaintiff. (Id., ¶ 9; Plaintiff's deposition transcript, p. 129; Exhibit C)

12. The defendant caused the plaintiff to be removed from the Tactical Operations Unit, from the selection process for SOG and K9 Unit, and from the Confined Space Rescue Team. (Plaintiff's Interrogatory Answers, submitted by defendant as Exhibit 3, ¶ 11)

13. The defendant attempted to have the plaintiff arrested when he was falsely accused by an inmate of sexual harassment. She violated administrative directives of the Department of Correction in attempting to do so. Pursuant to department directives, whenever an accusation is made against a corrections officer by an inmate, the warden is supposed to conduct an administrative investigation. The defendant has done so in all other instances of accusations of sexual misconduct made by inmates against corrections officers. She did not do so in the case of the plaintiff. Instead, she conducted no investigation, advised the inmate's family to contact the State Police, skipped the departmental chain of command and called the State Police, and stated to the investigating trooper that she considered the plaintiff guilty and that the plaintiff should be arrested. (Id., ¶¶ 11, 12; Plaintiff's deposition transcript, pp. 144-51, 155-56)

14. When two other corrections officers under her command were

accused by inmates of sexual misconduct – a more serious charge than that brought against the plaintiff – the defendant followed proper procedure and had an internal investigation conducted. She intentionally did not do so in the case of the plaintiff, thus treating him differently from two other similarly-situated officers. (Plaintiff's Interrogatory Answers, ¶¶ 13, 14; Plaintiff's deposition transcript, pp. 154-59)

15. The plaintiff's union representative filed a written grievance, under oath, complaining that the plaintiff was treated differently from all other corrections officers in the manner in which the defendant handled the sexual harassment complaint described above. (Exhibit B)

16. Membership in the C.E.R.T. team carried with it a great deal of prestige in the Department of Correction. It was considered an honor to be serving in that unit. (Plaintiff's deposition transcript, p. 38)

17. The plaintiff had applied for membership in the canine unit. Membership in that unit would have given him a great deal of overtime and thus would have increased his pay significantly. He was blocked from joining on the incorrect basis that he had used more than 8 sick days in the year. Yet another officer, who had used more than 8 sick days on multiple occasions within the year, was permitted to join. (Id., pp. 39-40)

18. The defendant removed the plaintiff from the Confined Space Rescue

8

Team without even telling him. When he found out about it and asked her why she had done that to him, she stated that her reason was that he had been sick or absent from the prison thirty-eight times. She subsequently made that assertion in writing. The assertion was false. (Id., pp. 67-69)

19. The defendant knew that the plaintiff had used only eight sick days in that time period. She added his contractually-authorized vacations to his sick days in order to come up with the 38-day allegation. She did this knowing the truth, for the specific purpose of removing him from the C.E.R.T. unit. The plaintiff was the only corrections officer whose use of contractually-approved vacation time was used against him by the defendant. Every other member of the C.E.R.T. unit had used his vacation and personal leave days in the same way the plaintiff had, but none of them was removed from the unit by the defendant. She did this only to the plaintiff although all the members of the unit had done the same thing. (Id., pp. 76-77, 162-63)

20. The defendant ran a very tight ship as warden. No supervisor was permitted to impose any sort of discipline without her authorization in advance. Thus, any discipline of any kind that was imposed upon the plaintiff was imposed at the direction of the defendant. (Id., pp. 125-26)

THE PLAINTIFF

BY _/s/_
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
His Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Edward F. Osswalt, Esq., Assistant Attorney General, P.O. Box 120, Hartford, CT 06141.

_/s/_
JOHN R. WILLIAMS