# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER ROBINSON, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | Case No. 3:02 CV 1470 (CFD) |
| | : | |
| ROSETTA JONES, | : | |
|     Defendant. | : | |


## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher Robinson brought this action against Connecticut Department of Correction employee Rosetta Jones, who is sued in her individual capacity only. Robinson alleges that while he was a correctional officer at the Brooklyn Correctional Institution and defendant Jones was the warden at that facility, Jones retaliated against him for exercising his First Amendment right to free speech and denied him equal protection of the law, in violation of Robinson's rights under the Fourteenth Amendment. Pursuant to 42 U.S.C. §§ 1983 and 1988, Robinson seeks compensatory damages, punitive damages, attorneys' fees, and costs. Jones denies Robinson's allegations, raises as an affirmative defense that she is entitled to qualified immunity, and has filed a motion for summary judgment.

## I.    Background[1]

Robinson first was employed by the Connecticut Department of Correction in 1988, and was assigned to the Brooklyn Correctional Institution ("Brooklyn Correctional") in Brooklyn,

---

[1] The following facts are taken from the parties' Local Rule 56 statements (and related materials) and are undisputed unless otherwise indicated.

Connecticut beginning in 1992. At the time of all events at issue in this litigation, Rosetta Jones was the warden of Brooklyn Correctional.

Robinson claims that his troubles with Warden Jones began in 1998, when Robinson was removed as a member of the Confined Space Rescue Team ("CSRT" or "Team"), a more responsible position within the Department of Correction.[2] Warden Jones' letter advising Robinson of his removal stated that the reassignment was due to Robinson's excessive absences. Robinson filed a grievance through his union, stating that 30 of his 38 absences were approved and that he merited continued membership on the Team. A hearing officer subsequently determined that the absences were approved, Robinson's removal was overturned, and he was reinstated to the CSRT. Robinson claims (and Jones denies) that upon being reinstated to the Team, Jones began to retaliate against him for challenging her decision.[3]

_____

[2] The CSRT is one of several "honors units" or "special teams" within the Department of Correction. Others include the C.E.R.T., a regional emergency response team; the Canine (K-9) Unit; Special Operations Group; and Honor Guard. Membership on the various special teams did not increase correctional officers' base pay (though it might lead to individual officers earning overtime), nor was membership in those groups covered by the provisions of the correctional officers' collective bargaining agreement. See Doc. #33 at ¶¶ 15, 40; Doc. #37 at ¶¶ A-15, A-40.

[3] At his deposition in this case, Robinson claimed that Jones's harassment actually started earlier, when Robinson placed a bumper sticker related to the Connecticut gubernatorial campaign between John Rowland and Barbara Kennelly on Brooklyn Correctional Complex Warden Brian Murphy's state car as a practical joke. As Rowland and Kennelly appeared on the November 4, 1998 general election ballot, this incident likely took place in 1997 or 1998. In any case, Robinson said that a meeting was held to discuss the incident at which he, his union representative, Complex Warden Murphy, and Warden Jones were present. (While Warden Jones was the chief administrator at Brooklyn Correctional, she was directly supervised by Complex Warden Murphy. See Doc. #33 at ¶ 11; Doc. #37 at ¶ A-11.) Robinson then stated at his deposition that he felt this meeting inaugurated hostility from and retaliation by Warden Jones against him.

Robinson has never amended his complaint to include this incident (or others identified infra) as additional allegations. Nonetheless, as the defendant has responded to this and other

Robinson does not recount any further specific incidents until 2000.  In March of that year, he claims that a captain at Brooklyn Correctional approached him and criticized Robinson for associating with a union steward.  Robinson claims that this was an attempt to intimidate him from exercising his First Amendment right of free association, but that Warden Jones did nothing to protect Robinson or to discipline the offending captain upon being informed of the incident.

On August 12, 2000, Robinson was turning off lights in an electrical closet when he slipped on some improperly stored bags of plastic soda bottles and bruised his knee.  Robinson filed an incident report about his injury, and included in the report that he had informed a lieutenant about the potentially hazardous condition four days earlier.  Robinson then claims that a different Brooklyn Correctional supervisor, Lieutenant Pat Lalumiere, instructed him to delete that reference from the report.  Robinson declined to amend his report.  On September 1, 2000, Warden Jones issued "written counseling" to Robinson for failing to abide by the lieutenant's instructions regarding the incident report.[4]  Robinson claims that Jones's discipline in this instance also constituted unlawful intimidation or retaliation for exercising his First Amendment rights.

On August 26 and September 5, 2000, Lieutenant Lalumiere and a Lieutenant Phaia questioned Robinson about various procedures at Brooklyn Correctional.  In both instances, Robinson felt that he was being verbally abused by the lieutenants and refused to answer any

---

unpled allegations in her motion for summary judgment and her Rule 56 statement, the Court will consider the totality of Robinson's allegations in ruling on the motion.

[4] The written counseling letter served as a formal notification that Robinson had violated various administrative directives of the Department of Correction.  A copy was issued to Robinson directly, with additional copies sent to the Human Resources department and placed in Robinson's personnel file.  See Doc. #34 at Exh. 10.

questions without a union representative present. Robinson then was issued notice to appear at a

Loudermill hearing to discuss his inappropriate conduct toward those supervisors.[5] That notice

was signed by Major Daniel Martin, acting on behalf of Warden Jones.[6]

The Loudermill hearing was convened on September 27, 2000. After evaluating the

complaints raised against Robinson there, Major Martin (in his capacity as Acting Warden)

issued a written reprimand to Robinson on November 3, 2000, stating that his conduct toward

Lieutenants Lalumiere and Phaia had been "unprofessional" and that similar behavior in the

future could subject Robinson to "more severe disciplinary action." See Doc. #34 at Exh. 9.

Because of the charges precipitating the Loudermill hearing and the subsequent disciplinary

action taken against him, Robinson first was temporarily suspended and later removed as a

member of the Tactical Operations District III C.E.R.T. unit, another honors position within the

Department of Correction.[7]

Finally, sometime around January 11, 2001, a Brooklyn Correctional inmate filed a

---

[5] A Loudermill hearing draws its name from Cleveland Bd. of Educ. v. Loudermill, 470
U.S. 532 (1985), in which the Supreme Court held that a tenured public employee was entitled to
a pre-termination disciplinary due process hearing that included "oral or written notice of the
charges against him, an explanation of the employer's evidence, and an opportunity to present his
side of the story." Id. at 546.

[6] It is unclear from the record where Warden Jones was at this time, but the parties agree that
Major Martin had temporarily assumed the position of Acting Warden and that his actions
were taken on Jones' behalf. See Doc. #33 at ¶¶ 28, 30; Doc. #37 at ¶¶ A-28, A-30.

[7] In his responses to interrogatories and his brief in opposition to the motion for summary
judgment, Robinson claims that at the same time he was removed from the Tactical Operations
Unit, he additionally was precluded from applying for similarly advanced positions in the Honor
Guard, Special Operations Group, Canine Unit, and again removed from the Confined Space
Rescue Team. See Doc. #34 at Exh. 3; Doc. #36. Again, Robinson has not amended his
complaint to include these allegations, but the defendant has discussed them in her motion for
summary judgment. Therefore, the Court will consider the additional allegations.

complaint alleging that Officer Robinson has sexually harassed him when the two were alone in the inmate's cell.  Robinson claims in his Rule 56 statement and his opposition papers to the motion for summary judgment that Warden Jones treated him differently from other officers who were the subjects of complaints, by conducting no administrative investigation and immediately attempting to have Robinson arrested by the State Police.[8]

Robinson ultimately retired from Brooklyn Correctional on March 7, 2001 due to a workplace-related shoulder injury.

## II.     Standard of Review

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323.

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving

---

[8] Jones denies taking any such action.  This incident and Jones' alleged response does not appear in Robinson's complaint, but only in the parties' summary judgment papers.

party in order to determine how a reasonable jury would decide." <u>Aldrich v. Randolph Cent.</u>

<u>Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not

differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923

F.2d 979, 982 (2d Cir. 1991).

## III.    Discussion

      Robinson's claims against Jones fall under two main causes of action: first, that her

actions from 1998 on were intended to retaliate against him for exercising his First Amendment

rights of free speech and freedom of association with his union; and second, that Jones treated

Robinson differently from similarly situated correctional officers, thus violating his right to equal

protection of the law under the Fourteenth Amendment. Each cause of action will be analyzed in

turn.

### A.    First Amendment Retaliation

      Where the plaintiff is a public employee alleging that he was discriminated against in

retaliation for exercising his First Amendment rights, the plaintiff must initially show that

> (1) the speech at issue was made as a citizen on matters of public concern rather
> than as an employee on matters of personal interest, . . . (2) he or she suffered an
> adverse employment action, . . . and (3) the speech was at least a substantial or
> motivating factor in the [adverse employment action] . . .

<u>Morrison v. Johnson</u>, 429 F.3d 48, 51 (2d Cir. 2005) (quoting <u>Johnson v. Ganim</u>, 342 F.3d 105,

112 (2d Cir. 2003)).

      If the plaintiff establishes these factors, the defendant still may prevail by showing by

preponderance of the evidence that "it would have taken the same adverse action even in the

absence of the protected conduct." <u>Petrario v. Cutler</u>, 187 F. Supp. 2d 26, 31 (D. Conn. 2002)

(quoting Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 553 (2d Cir. 2001)).  Upon reviewing the incidents alleged by Robinson, the Court concludes that each fails to meet at least one of the three prongs necessary for a valid First Amendment retaliation claim.

### 1.    The Bumper Sticker

Robinson's first act of "speech" involved placing an election-related bumper sticker on Warden Brian Murphy's state car.  Robinson admits, however, that he affixed the sticker as a practical joke, not as a statement of political advocacy.  See Doc. #33 at ¶¶ 12, 14; Doc. #37 at ¶¶ A-12, A-14.  The determination of whether a particular instance of speech relates to a matter of public concern is a question of law for the Court, which is directed to "focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  Fox v. Town of East Haven, 2006 U.S. Dist. LEXIS 4449 at *18-*19 (D. Conn. Jan. 6, 2006).  Speech or conduct that "is personal in nature and generally related to [one's] own situation" is not protected.  Id. at *23 (quoting Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991)).  The Court finds that Robinson's joke or prank was personal in nature and does not qualify as protected public speech.  It therefore can not form the basis of a First Amendment retaliation claim.

### 2.    The 1998 Removal from the Confined Space Rescue Team

Similarly, Robinson's grievance regarding his temporary removal from the Confined Space Rescue Team in 1998 can not be termed a statement on a matter of public concern. Robinson claims that because he invoked the protections of his union in grieving the removal, the First Amendment automatically is implicated.  When, however, an employee "is not on a mission to protect the public welfare" but rather seeks to "protect h[is] own reputation and individual

development" in his job, that speech is not protected under the First Amendment. Ezekwo, 940

F.2d at 781; see also Larsen v. Lynch, 1998 U.S. Dist. LEXIS 21932 at *9-*13 (D. Conn. Mar.

31, 1998) (commenting that "the considerations underlying the 'public concern' test apply as

equally to union activities as they would to any other speech by a public employee" and holding

that plaintiff's five personal union grievances did not reflect statements on matters of public

concern).   As the Supreme Court has written,

> To presume that all matters which transpire within a government office are of
> public concern would mean that virtually every remark . . . would plant the seed of
> a constitutional case. . . . [The] First Amendment does not require a public office
> to be run as a round table for employee complaints over internal office affairs.

Connick v. Myers, 461 U.S. 138, 149 (1983).

Moreover, even assuming that Robinson's union grievance rose to the level of a statement

on a matter of public concern, he has not shown that he suffered any subsequent adverse

employment action upon filing that grievance.  Indeed, Robinson has shown just the opposite.

The Second Circuit has defined "adverse employment action" as it applies to First Amendment

retaliation claims to include "discharge, refusal to hire, refusal to promote, demotion, reduction

in pay, and reprimand."  Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).  Other actions may

qualify as adverse if the plaintiff provides evidence that, under an objective standard,"

demonstrates that the "total circumstances of [his] working environment changed to become

unreasonably inferior and adverse when compared to a typical or normal, not ideal or model,

workplace."  Id.

In Robinson's case, the very speech that he contends led to retaliation against him (the

filing of his grievance) actually instigated an administrative hearing which resulted in Robinson's

reinstatement to the CSRT.  Far from suffering an adverse employment action, Robinson's

speech restored or improved his work conditions.  This incident cannot form the basis of a First

Amendment retaliation claim.

### 3.    The March 2000 Interaction with a Brooklyn Correctional Captain

Robinson then alleges that a captain at Brooklyn Correctional approached him in March

2000 and criticized Robinson's friendship with a union steward, in what Robinson believes was

an attempt to intimidate him from exercising his First Amendment right to free association.

Robinson further alleges that Warden Jones, as part of her campaign of retaliation against him,

did nothing to prevent such intimidation.

Robinson has provided no evidence that he suffered any adverse employment action as a

result of this incident, nor that the incident constituted anything more than a single comment

from the captain.[9]  Robinson fails to establish a prima facie case of First Amendment retaliation

on this claim.[10]

---

[9] Robinson filed another grievance regarding these remarks.  The parties agree that upon reviewing the grievance, a deputy warden at Brooklyn Correctional determined that the captain's comment was made "with no intent to coerce."  See Doc. 33 at ¶ 20 (Defendant's Rule 56(a)(1) Statement); Doc. 37 at ¶ A-20 (Plaintiff's Local Rule 56 Statement).

[10] To the extent that Robinson claims that his March 2000 encounter with the captain and any following incidents constituted retaliatory harassment for his successful 1998 grievance restoring him to the CSRT, those claims also fail.  To make a prima facie case of First Amendment retaliation, the plaintiff must show a causal connection between his speech and any adverse employment action "sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  In order to be causally connected, the speech and resulting adverse action must occur in reasonable "temporal proximity" to one another.  Petrario v. Cutler, 187 F. Supp. 2d 26, 33 (D. Conn. 2002).  As Robinson's CSRT grievance was filed in 1998 and he recounts no allegedly retaliatory incidents until 2000, he cannot establish a temporal link and an adequate causal connection between the grievance and any subsequent events cited in his

### 4.     The 2000 Injury Report

On August 12, 2000, Robinson slipped on some improperly stored plastic soda bottles while he was working in an electrical closet at Brooklyn Correctional. Robinson had informed a lieutenant four days before about the potential danger of the bottles. When Robinson wrote an injury report documenting his fall, he included a reference to his earlier comment to the lieutenant. A different lieutenant, Pat Lalumiere, directed Robinson to delete the reference from his report, which he declined to do. Robinson subsequently received a written counseling letter from Warden Jones regarding his failure to follow the instructions of a supervisor.

Again, this incident fails to constitute unlawful First Amendment retaliation. First, Robinson's statement in the report was not on a matter of public concern. In his complaint, Robinson states that he initially reported the hazardous condition on August 8 "so that it could be corrected." See Complaint at ¶ 9. As he stated in his deposition, Robinson did not "feel safe" in deleting the reference because he felt that his earlier comment regarding the improperly stored bottles was "pertinent information to the cause of the injury" and failure to include that information in the injury report "could subsequently come back to bite me in the rear end." See Doc. #34 at Exh. 1 (Plaintiff's Deposition, July 9, 2004). He also felt that filing a less than fully truthful report "would have been committing a crime." Complaint at ¶ 10. Robinson's refusal to amend his report was personally motivated, stemming from his concerns that an incomplete or inaccurate injury report could be used against him at work.

In his response to the defendant's motion for summary judgment, Robinson for the first

complaint. See id. (finding that alleged adverse actions occurring one year after filing grievance were not sufficiently temporally related to establish a causal connection); see also Morris, 196 F.3d at 113 (holding that "no inference of causation is justified" when two years elapsed between protected speech and plaintiff's discharge).

time argues that his August 8 verbal report on the bottles was required by the federal

Occupational Safety and Health Act of 1970 ("OSHA") and that "compliance with OSHA safety

requirements clearly is a matter of public concern."  Doc. # 36 at 11.  Robinson, however, never

mentioned OSHA in his complaint or his deposition.  A "plaintiff may not cast [his] personal

work grievances in the light of public concern merely by offering a conclusory allegation that

[his] speech or conduct is a matter of public concern."  Fox v. Town of East Haven, 2006 U.S.

Dist. LEXIS 4449, *20 (D. Conn. Jan. 6, 2006).  A privately motivated statement, even if the

plaintiff also may have a "tenuous and incidental" motivation to advance a public interest, does

not merit First Amendment protection.  Id. at *20-*21; see also White Plains Towing Corp. v.

Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993), cert. denied, 510 U.S. 865 (1993) ("Even as to an

issue that could arguably be viewed as a matter of public concern, if the employee has raised the

issue solely in order to further his own employment interest, his First Amendment right to

comment on that issue is entitled to little weight. . . .")

    Further, the only evidence Robinson submits in support of his contention that he made a

complaint under OSHA is an unsigned and unsworn letter from his union steward, dated

September 30, 2000 and addressed to Brooklyn Correctional Captain Wayne Ford.  See Doc. #36

at Exh. A.  The defendant has moved to strike this exhibit as unauthenticated and inadmissible

hearsay.  The Court previously denied the motion to strike, without prejudice to considering the

arguments therein at summary judgment (see Doc. #53), and now declines to consider this

exhibit in evaluating the motion for summary judgment.  As the Second Circuit wrote in

Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14 (2d Cir. 1995):

        When the defendant moves for summary judgment on the ground that there is an
        absence of evidence to support [an] essential element [of plaintiff's claim], the

> plaintiff's burden of producing such evidence in opposition to the motion is de
> minimus. Nonetheless, plaintiff cannot meet this burden through reliance on
> unsupported assertions. Once the moving party has made a properly supported
> showing sufficient to suggest the absence of any genuine issue as to a material
> fact, the nonmoving party, in order to defeat summary judgment, must come
> forward with evidence that would be sufficient to support a jury verdict in his
> favor.

Id. at 18 (citations omitted). With this standard in mind, the Court concludes that Robinson has

not met his burden of raising a material issue of fact in opposition to summary judgment. None

of the assertions in the union steward's letter are substantiated elsewhere in the record.

Robinson's own statements, at best, fail to support the assertions in the letter and, at worst,

contradict them.

　　　　Moreover, even if Robinson's verbal report on the bottles and his subsequent injury

report were considered statements on matters of public concern, he has not established that he

suffered any adverse employment action for that speech. The written disciplinary letter Robinson

received upon declining to edit his injury report was later removed from his personnel file. See

Doc. #33 at ¶ 24; Doc. #37 at ¶ A-24 (Plaintiff's Rule 56 Statement, disagreeing with one

assertion in defendant's paragraph 24 but not disagreeing that the "formal counseling letter had

been reduced to an oral discussion and the letter removed from plaintiff's personnel file"). A

plaintiff cannot suffer an adverse employment action for disciplinary charges which ultimately

are dismissed. See Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996). Therefore, Robinson also

fails to state a valid claim of First Amendment retaliation on this basis.

### 5.　　The 2000 Loudermill Hearing and Aftermath

　　　　In August and September 2000, Robinson was questioned on two occasions by Brooklyn

Correctional lieutenants about his work duties.[11]  On both occasions, Robinson stated that he would not answer questions "without a union representative present because of his feeling that the conversation would eventually lead to discipline for him."  Doc. #33 at ¶ 27 (Defendant's Local Rule 56(a)(1) Statement); see also Doc. #37 at ¶ 27 (Plaintiff's Local Rule 56 Statement, agreeing with this portion of Defendant's ¶ 27).  On September 22, 2000, the plaintiff was issued notice of a Loudermill hearing on September 27, 2000, the subject of which was Robinson's alleged inappropriate conduct toward his supervisors.  As a result of that Loudermill hearing, Robinson received a written reprimand on November 3, 2000; the reprimand stated that Robinson's failure to provide information to his supervisors about the facility's functioning in a respectful manner violated Brooklyn Correctional's administrative directives.[12]  On or about the time that the Loudermill notice was issued, Robinson was suspended from the Tactical Operations District III C.E.R.T. unit, an honors unit within the Department of Correction.

Again, Robinson's comments to Lieutenants Lalumiere and Phaia and the ensuing events do not constitute a First Amendment retaliation claim.  Robinson's refusal to answer the two lieutenants' questions cannot be considered statements on matters of public concern.  Robinson's invocation of his union representation rights was due to his personal belief that he might be subject to discipline.  While Robinson indubitably has the right to freely associate with his union, to state a valid First Amendment freedom of association claim he must show "that the

---

[11] Specifically, on August 26, 2000, Lieutenant Lalumiere questioned Robinson about his presence on the mezzanine of Brooklyn Correctional.  On September 5, 2000, Lieutenant Phaia asked Robinson why he had not opened the facility's barbershop.  See Doc. #33 at ¶¶ 25-26; Doc. #37 at ¶¶ A-25, A-26.

[12] The reprimand was signed by Acting Warden Daniel Martin.  Martin previously had issued the Loudermill notice to Robinson; at that time, Martin signed the notice on behalf of Warden Jones.

13

associational conduct at issue touches on a matter of public concern." Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004). Robinson has made no such showing; he simply chose not to answer questions about his own actions while at work for fear that those actions might expose him to censure. This is insufficient to transform Robinson's refusal into protected First Amendment associational activity. As previously cited, "the First Amendment does not require a public office to be run as a round table for employee complaints over internal office affairs." Connick v. Myers, 461 U.S. 138, 149 (1983).

Nor has Robinson shown that he suffered an adverse employment action causally connected to any protected conduct in which he may have engaged in August 2000, September 2000, or at any time before. Robinson was suspended from the C.E.R.T. unit on September 29, 2000 and then removed from that unit in November 2000. He also was precluded from applying to other special teams such as the K-9 Team, Honor Guard, and Special Operations Group. In his Local Rule 56 statement, however, Robinson agreed that the C.E.R.T. removal and his prohibition from applying to other special teams was due to the written reprimand issued him; agreed that it was department policy that correctional officers with discipline in their files were not allowed to serve on special teams including C.E.R.T. and CSRT; and agreed that he was informed in November 2000 that he could reapply to all special teams after waiting a year with no further disciplinary issues. See Doc. #33 at ¶¶ 31, 32, 40; Doc. #37 at ¶¶ A-31, A-32, A-40. Robinson further agreed that he left the employment of the Department of Correction before that year-long probationary period elapsed. See Doc. #33 at ¶ 42; Doc. #37 at ¶ A-42.

It is clear from the undisputed record that Robinson's removal from the special teams to which he belonged was due to the presence of a disciplinary letter in his file. "It hardly needs

14

saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." Weeks v. New York State, 273 F.3d 76, 86 (2d Cir. 2001) (holding that "notices of discipline," "counseling memos," and negative job evaluations do not constitute adverse employment actions). The fact that special teams members must have clean disciplinary records was, by admission of the parties, standard policy.[13] See also Beechwood Restorative Care Ctr. v. Leeds, 2006 U.S. App. LEXIS 2323, *15 (2d Cir. Jan. 31, 2006) (commenting that "an agency is entitled to summary judgment on a First Amendment retaliation claim if it can show that 'it would have taken exactly the same action absent the improper motive'" ) (quoting Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003)). Moreover, Robinson's removal from the special teams was temporary, as he admits. He was free to reapply to those teams after keeping a clean disciplinary record for one year. This fact also cuts against an inference that Robinson was the target of personal retaliation.

---

[13] Though Robinson attempts to establish facts leading to the opposite conclusion, his assertions are inconsistent. In his complaint and his own Rule 56 statements, Robinson states that Warden Jones first "demanded' his removal from the C.E.R.T. on September 29, 2000 and that he was actually removed from that position on November 30, 2000. In his responses to the defendant's Rule 56 statement, Robinson agrees with the defendant that his removal from the special teams was contemporaneous with the issuance of the formal discipline letter on November 3, 2000. In a different response, however, Robinson claims that he was suspended from the special teams "before the issuance of the Loudermill notice." See Doc. #37 at ¶ A-29. That would mean that Robinson was suspended before September 22, 2000, a date which does not conform either to any of Robinson's own assertions or those of the defendant, nor which is supported by citation to any evidence. In the body of his brief in opposition to the motion for summary judgment, Robinson again cites September 29, 2000 as the first date when he was removed from the special teams. See Doc. #36 at 8.

On this record, the Court must conclude that Robinson neither was suspended nor removed from the special teams before September 29, 2000, a week after he was issued a Loudermill notice and two days after the Loudermill hearing itself. The September 29, 2000 date supports the conclusion that Robinson's removal was pursuant to policy, not personal retaliation.

For the above reasons, Robinson's First Amendment retaliation claim based on these incidents fails as a matter of law.

### 6.     The 2001 Allegation of Sexual Harassment

Finally, Robinson claims that in 2001, a Brooklyn Correctional inmate falsely accused him of sexual harassment.  Robinson further claims that, when faced with these allegations, Jones attempted to have him arrested by the Connecticut State Police and violated numerous administrative directives.

This incident also can not form the basis of an independent First Amendment claim, as Robinson does not allege that he engaged in any protected speech surrounding these events.  To the extent that Robinson claims that Warden Jones attempted to have him arrested in retaliation for prior protected First Amendment activity, his claim also fails.  Robinson does not claim that he actually was arrested, disciplined, or otherwise suffered any adverse employment action due to the inmate's accusations.  He also agrees with the defendant that he "was exonerated from any criminal wrongdoing" into the matter.  See Doc. #33 at ¶ 37; Doc. #37 at ¶ A-37.

### B.     Equal Protection Claim

Robinson alleges that all of the incidents which underlay his First Amendment retaliation claim also demonstrate that Jones has violated his Fourteenth Amendment right to equal protection of the law.  He claims that he constitutes a "class of one" under Village of Willowbrook v. Olech, 528 U.S. 562 (2000), which held that a plaintiff who "has been intentionally treated differently from others similarly situated and [demonstrates] that there is no rational basis for the difference in treatment" may plead an equal protection violation.  Id. at 564.

16

To the extent that Robinson claims he has been treated differently from others exercising their First Amendment rights, his claim fails because he has not proven any violation of his First Amendment rights.  Robinson also claims that, when he was falsely accused of sexual harassment in 2001, he was treated differently from other similarly situated correctional officers. Robinson, however, has provided no evidence of how similarly situated officers were treated other than his information and belief.  At his deposition, he admitted that he did not know "for fact" that other officers were treated differently.  See Doc. #34 at Exh. A, pg. 159 (Plaintiff's Deposition, Jul. 9, 2004).  "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."  Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).  As he has failed to provide any evidence of disparate treatment, Robinson's equal protection claim fails as a matter of law.[14]

## IV.    Conclusion

For the above reasons, the Defendant's Motion for Summary Judgment [Doc. #31] is GRANTED in its entirety.  The Clerk is directed to enter judgment in favor of the defendant and close this case.

So ordered this _20th_ day of March 2006 at Hartford, Connecticut.


__/s/ CFD_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[14] Because the Court concludes that all of Robinson's claims fail as a matter of law, it declines to reach the issue of whether Jones' actions would be protected by qualified immunity.

17